# SUPREME COURT OF MISSISSIPPI

## AT THE

## MARCH TERM, 1915.

WESTERN UNION TELEGRAPH CO. ET AL *v.* McKINNEY.

[67 South. 647]

TELEGRAPHS AND TELEPHONES. *Delay in delivery of messages. Joint liability. Punitive damages.*

In a suit for damages for delay in forwarding a telegraph message against two telegraph companies where each company acted independently of the other, there could be no joint liability for punitive damages, where it is not shown that the delay was due to any joint action on their part. In such case if either company is liable for punitive damages, each must be punished separately and for its own act and omissions. ,

APPEAL from the circuit court of Neshoba county. HON. C. L. DOBBS, Judge.

Suit by Mrs. Etta McKinney against the Western Union Telegraph Company and others. From a judgment for plaintiff, defendant appeals.

Appellee, who was plaintiff in the court below, filed suit against the Western Union Telegraph Company, Cumberland Telephone & Telegraph Company, and the Central Mississippi Telephone Company for damages for delay in delivering a telegram addressed to her at Philadelphia, Miss., sent to her by her son at Baskin, La., announcing the death of another son. The telegram is as follows:

109 Miss.]

(1)

"Baskin, La., 8-29, 1908.
"To Mrs, Etta McKinney Philadelphia, Miss.: Calvin dead are you coming let me know Rush answer.

C. B. Coghlan."
"OK—S—RH. 12:00 p.m."

Appellee's proof shows that this telegram was delivered to the agent of the Western Union Telegraph Company at Baskin, La., at eight o'clock a.m., August 29th, though it is marked as if received at noon of that day. The Western Union has no office at Philadelphia, Miss., and the telegram in question was sent by the Western Union to Meridian, Miss., there to be relayed by way of the Cumberland Telephone & Telegraph Company, which had a joint connection with the Central Mississippi Telephone Company, and thus enabling it to deliver its message at Philadelphia. The message was delivered to the Cumberland Telephone Company, at Meridian, Miss., about three-thirty p. m., August 29th, but was not delivered to appellee until about noon of August 31st. The Cumberland Telephone Company introduced evidence to show that its line by way of Union, Miss., where it connected with the line of the Central Mississippi Telephone Company, was down, and that it advised the Western Union operator at Baskin, La., about four-forty in the afternoon of the day that the message was sent that it could not be delivered on that account. There is evidence showing that the telephone connection could have been made with Philadelphia *via* Java, Miss., where the Cumberland had an office which connected with the independent line into Philadelphia. It is also shown that the Postal Telegraph-Cable Company had an office at Philadelphia, and that the message could have been relayed at either Jackson or Vicksburg, and transmitted by the Postal to Philadelphia, and that this kind of service was frequently performed.

The Western Union Telegraph defends upon the ground that the message was transmitted promptly to Meridian, Miss., and there turned over to the Cumberland Telephone Company, and that the delay was not on the part of the Western Union.

The defense of the Cumberland Telephone Company, is that their line was down which connected them with Union, Miss., where the message had to be relayed by way of the Central Mississippi Telephone Company, and that it promptly advised the Western Union of that fact, and therefore it was not liable to plaintiff for any damage caused by the delay.

On the trial, a peremptory instruction was granted for the Central Mississippi Telephone Company, it being shown that this company had delivered the message to appellee promptly upon receipt of same by their agent on August 31st, and the case went to the jury on an instruction which permitted them to find punitive damages against the other two defendants. The jury returned a verdict as follows:

"We, the jury, find for the plaintiff in the sum of one thousand dollars punitive damages."

From which the appellants have appealed.

The appellants contend that there is no joint tort, and that each of the appellant companies acted independently of the other, and there could be no joint liability for punitive damages, since it is not shown that the delay was due to any joint action on their part.

*Bowers & Griffith* and *Harris & Potter*, for appellants.

It is elemental that in actions of tort against two or more defendants where the defenses of each are separate, and depending upon separate acts or omissions, the jury may find in favor of one or more and against another or others of said defendants, and in such a case it was held in *Dunn* v. *Newberry*, 86 S. W. 626, that it was error on the part of plaintiff in such case

in not requesting and drawing instructions so as to authorize a verdict. The plaintiff joined these defendants in tort, they made separate and distinct defenses, and it was upon plaintiff to so draw his instructions, and to have verdict framed as to hold only the defendant, that his evidence showed was liable on some one consistent theory of the case, not so that if this state of facts be true and one defendant is liable, hold both, or if this other state of facts be true and the other defendant is liable hold both and if there be doubt as to which is liable hold both, but that is exactly what was done by plaintiff in this case; and we say that the verdict is void, and likewise the judgment rendered upon it.

"Where the separate action of each defendant causes a single injury and where the share of each in causing it is separable, it would be unreasonable and unjust to assess the damages jointly." *Long* v. *Swindle,* 77 N. C. 176.

And how much more so when the facts show that one and not both were in actionable default. The two defendants are not joint tort-feasors; that only one of them is guilty, is the most that can be said. They were not acting together, but separately, each over its own independent lines. *Railway Co.* v. *Holmes,* 75 Miss. 371; *St. Clair* v. *Railroad,* 77 Miss. 789; *So. Railway Co.* v. *Vaughan,* 86 Miss. 376, cited *supra;* Jones on Telegraphs, 458.

The court will see by referring to the record that one ground set up by the Cumberland Telephone Company was that a joint verdict could not be rendered in this case. So far as the record discloses, the Western Union Telegraph Company and the Cumberland Telephone Company were independent actors in the case. It is not shown that there was any sort of connection between them more than the transaction in hand, that is to say, that the telegram which originated on the line

of the Western Union was given by the Western Union to the Cumberland Telephone Company to be transmitted by it to destination. It was not shown that there was any sort of traffic or business relations existing between the two corporations. Now, the point made by me for the Cumberland Telephone Company is that a joint judgment could not be rendered against the two defendants in the absence of proof that the two participated in the wilful wrong or the malicious act, and in this I insist that we are supported by a rule of universal application. The rule is thus laid down in 13 Cyc. at page 116, paragraph H:

"Where the liability is joint as to actual damages sustained, exemplary damages can, as a general rule only, be awarded against those who have participated in or contributed to the malicious act or gross negligence involved; but where all have acted in concert and are equally guilty they are liable to the same extent."

"Exemplary damages are not recoverable against several defendants unless all are shown to have been moved by a wanton desire to injure." *Boutwell* v. *Marr*, 71 Vt. 1; S. C., 42 Atl. 607; S. C., 76 Am. St. Rep. 746; S. C. 43 L. R. A. 803.

*G. E. Wilson* and *Adams & Dobbs,* for appellee.

It is unnecessary to go to other authorities to find what the rule in this state is as to joint liability, whether the parties be called "joint tort-feasors," "concurring wrong doers," or just simply parties who are jointly liable for an injury. The rule, we think, is well stated and adopted in the cases cited by us in our supplemental brief. Counsel for appellants would hold the rule in too narrow a groove, and if applied as they would have it, would result, we insist, in the defeat of rights which are and should be recognized and upheld by the law. As is well said in the opinion of the court in the *Nelson*

*case,* near top of page 621, right hand column, of 53 So. Reporter, quoting from the opinion of the court in the case there cited: ''In respect to negligent injuries there is considerable difference of opinion as to what constitutes joint liability.'' No comprehensive general rule can be formulated which will harmonize all the authorities.'' It is further said by this honorable court still quoting from the opinion above cited: ''That where two or more owe to another a common duty, and by a common neglect of that duty such other person is injured, then there is a joint tort, with joint liability.'' We submit that the case before the court is certainly within the rule last above laid down by this court in the Nelson case. The appellants here owed to appellee a common duty, a joint and several duty we might say, to promptly transmit and deliver the telegram to appellee, and the common, combined negligence, the joint and several negligence, of the two companies caused the injury complained of. There was only one injury to appellee. The court and jury found that both appellants were responsible for that one injury. Quoting further from the opinion of the court in the Nelson case: ''The weight of authority will, we think, support the more general proposition that, when the negligence of two or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concert of action.'' Counsel for appellant, Western Union Company, endeavor to escape from this rule by giving some of the definitions of the word ''concur,'' and argue from the definitions quoted that this rule could not apply to the instant case. Their argument on this point is far too technical we think to be practical. The facts of each case must be applied, and the rule applied to the facts, and when this is done the only inquiry is, can the rule of law and the facts of the particular case be harmonized? We find among other

definitions given in Webster's Dictionary, that "concur" means to "contribute or help towards a common object or effect." Other definitions "combined," "united," etc. Therefore the "combined" negligence, the negligence of the two appellants "combined," the "united negligence —that is, the negligence of the two companies—the whole negligence, the negligence of both when "combined" or "united," caused the injury. Or, under the first definition above quoted, the negligence of both companies contributed to bring about the injury complained of. If this is true, then under the rule last above quoted from the Nelson case, the appellants are jointly liable, whether there be any proof of "a common design or concert of action" on their part or not, because there was only one injury, a single injury. "Where there is but one injury, there can be but one satisfaction for that injury; but until there is a satisfaction the injured party may bring as many separate suits as there are joint wrongdoers, and in the end elect to take the highest assessment of damage made by any judgment." *Nelson case, supra,* and citations. The rule as to joint liability where a single injury is produced by the separate and independent acts or negligence of several is clearly and simply stated in 38 Cyc., at page 488, as follows: "Where, although concert is lacking, the separate and independent acts or negligence of several parties combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it." We refer the court further to the remainder of the section and the numerous cases and illustrations there given, and also the notes and citations. It is true as insisted by counsel for appellants that while the message was in course of transmission, it necessarily passed or was transmitted over the respective lines of the two Companies; and it is further true that the two companies de-

fended separately in the courts; and were represented by different counsel; but these facts conceded do not necessarily acquit appellants of joint liability for the "single" injury done appellee, even though caused by separate and independent acts of negligence of the two companies. There is much in the record in this case to show a common understanding, a common design, a common purpose, a common cause, if you please, in the handling of the message in question. Take all the proof as to the manner the message was "juggled" with at Meridian, and the feigned effort of both companies on the trial of the case each to cast blame on the other—the Western Union trying to escape when it had actual notice that the Cumberland Company could not, according to its contention, promptly deliver the message, and no further effort on the part of the Western Union to make delivery over any other route when it is in proof that there was another route that could have been used either in the first instance or after notice from the Cumberland that that company could not make prompt delivery—the Cumberland trying to escape by claiming to have given the notice to Western Union and contending that such notice on its part relieved it from further liability, and yet retaining the message and finally making delivery over its lines two days afterwards. All the facts shown in the record, which clearly proved that both companies were guilty of such a reckless disregard of appellee's rights, well warranted the court and jury in finding that the companies were not only severally liable but jointly liable.

SMITH, C. J., delivered the opinion of the court.

The court below erred in permitting the jury to render a verdict for punitive damages against appellants jointly. Each acted independently of the other in forwarding this telegram, and neither is responsible for the acts of the other with reference thereto; and if either of them

acted in such manner as to justify the imposition of punitive damages against it, the other is not responsible therefor. So that if they are to be punished for the delay in delivering this telegram, each must be punished separately and for its own acts and omissions.

Since the record does not clearly disclose why this telegram was not delivered by the Cumberland Telephone & Telegraph Company by way of Java, which it seems could have been done, and why the Western Union Telegraph Company delayed in delivering it to the Cumberland Telephone & Telegraph Company from eight a.m. until three-thirty p. m., if it in fact did so delay to deliver it, we deem it best to decide no other question in the case. ·

*Reversed and remanded.*